

ENTERED
08/17/2010

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

In re:                                         §
                                               §          CASE NO. 06-35891-H4-7
MICHAEL RAY MCCOMBS,                            §
                                               §
Debtor.                                        §
                                               §
                                               §

## MEMORANDUM OPINION ON TRUSTEE'S FIRST APPLICATION
## FOR INTERIM COMPENSATION
[Docket No. 252]

### I. INTRODUCTION

The Court writes this Memorandum Opinion because it concerns an issue important to Chapter 7 trustees; namely, whether they should be denied compensation because efforts reasonably taken to generate cash for payment of unsecured claims eventually failed to produce any funds. Stated differently, should a trustee be totally denied compensation because an objecting creditor, with the benefit of 20-20 hindsight, argues that the trustee's failure to generate funds for unsecured creditors automatically merits a denial of all compensation?

In this particular Chapter 7 case, the Court must decide whether to grant the Trustee's First Application for Interim Compensation in the amount of $57,302.65. The homestead exemption of Michael Ray McCombs (the Debtor) was limited to $125,000.00 by 11 U.S.C. § 522(p).[1] W. Steve Smith, the Chapter 7 trustee (the Trustee), sold the homestead—which was comprised of two tracts (the Homestead)—generating an amount of proceeds significantly

---

[1] Any reference hereinafter to "the Code" refers to the United States Bankruptcy Code. Further, reference to any section (*i.e.*, §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code. Reference to a "Rule" or "Bankruptcy Rule" refers to the Federal Rules of Bankruptcy Procedure.

1

greater than $125,000.00. The Trustee now seeks interim compensation, pursuant to Sections 326(a), 330, and 331, for the value of his services relating to the sale of the Homestead.

H.D. Smith Wholesale Drug Company (H.D.S.), a creditor in this case, contends that the Trustee should receive no compensation for his services because, after the Trustee sold the Homestead, this Court issued a judgment in Adversary Proceeding 07-03043 (the Adversary Proceeding) declaring that H.D.S.'s lien on the Homestead is valid and enforceable.[2] The effect of this Court's ruling is that H.D.S.'s lien attached to all of the proceeds from the sale of the Homestead after distribution of the $125,000.00 to the Debtor and payment of all liens superior to H.D.S.'s lien.  As a result, H.D.S. asserts that the Homestead was fully encumbered, and because the Trustee's efforts have generated no proceeds to pay unsecured claims, no compensation under Sections 326(a), 330, and 331 should be allowed. It is no surprise that H.D.S. adamantly opposes the Trustee's request, as any compensation paid to him will come from the proceeds to which H.D.S.'s lien has attached.[3]

After consideration of the record and arguments of counsel, this Court concludes that the Trustee deserves to be compensated, although not to the extent that he requests. This Opinion explains the Court's reasoning.

---

[2] *See H.D. Smith Wholesale Drug Co. v. McCombs (In re McCombs)*, Adv. No. 07-03043, 2007 WL 4411909 (Bankr. S.D. Tex. Dec. 17, 2007). The Adversary Proceeding was filed by H.D.S. to determine if its lien on the Homestead is valid and enforceable. In that suit, the Court had to decide an important issue to Texas homestead law; namely, whether the homestead exemption claimed by the Debtor prevented H.D.S.'s lien from attaching to the Homestead. While there were and currently are conflicting federal and state authorities regarding this particular issue, the Court ultimately held in favor of H.D.S. and concluded that its lien properly attached to the Homestead when H.D.S. abstracted its judgment prior to the filing of the Debtor's bankruptcy petition, thereby perfecting its lien. The issue is presently on appeal before the Fifth Circuit. As of the date of this Memorandum Opinion, the Fifth Circuit has not issued a ruling.

[3] There are no proceeds in this Chapter 7 estate other than the undistributed proceeds remaining from the sale of the Homestead. The Trustee is currently in control of these proceeds, as they are in his account pending a ruling from the Fifth Circuit on the Trustee's appeal of this Court's ruling in the Adversary Proceeding. If the Fifth Circuit affirms this Court's ruling, then the Trustee will distribute all of these proceeds to H.D.S. If the Fifth Circuit reverses this Court's ruling, then necessarily H.D.S. will not have a properly perfected lien on these proceeds, and the Trustee will distribute them to unsecured creditors.

The Court makes the following Findings of Fact and Conclusions of Law under Federal Rule of Civil Procedure 52, as incorporated into Federal Rule of Bankruptcy Procedure 7052, and under Federal Bankruptcy Rule 9014. To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such. The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party.

## II. FINDINGS OF FACT

1. Less than 1215 days prior to the filing of the Debtor's Chapter 7 petition, the Debtor and his wife at the time, Alicia Atkinson McCombs (Atkinson), purchased two adjoining parcels in Katy, Harris County, Texas. The parcel located at 2402 Ivy Run Court included a house where the McCombs resided (the Ivy Run Property); it was their homestead. The adjacent parcel located at 2406 Ivy Run Court was unimproved (the Ivy Run Lot); it was also part of their homestead. [Adv. No. 07-03043, Adv. Doc. No. 72, p. 2, ¶ 1].[4]

2. Prior to the filing of the Debtor's petition, H.D.S. obtained a judgment against the Debtor in the amount of $538,016.46. [Adv. No. 07-03043, Adv. Doc. No. 72, p. 3, ¶ 4].

3. On June 29, 2006, H.D.S. abstracted its judgment, and on July 7, 2006, recorded its judgment lien in the Official Public Records of Real Property of Harris County, Texas. [Adv. No. 07-03043, Adv. Doc. No. 72, p. 3, ¶ 5].

4. On November 3, 2006, the Debtor filed his Chapter 7 petition (the Petition Date). [Docket No. 1].

---

[4] Docket No. 72 filed in the Adversary Proceeding is this Court's Memorandum Opinion regarding the validity of H.D.S.'s lien on the Ivy Run Property and Ivy Run Lot. The Court now incorporates findings of fact from its prior opinion into this Memorandum Opinion as necessary to provide appropriate background for the issue currently before the Court. The findings in this Court's prior opinion were derived primarily from the parties' stipulations contained in the Joint Pretrial Statement [Adv. No. 07-03043, Adv. Doc. No. 65].

5.  On November 22, 2006, the Trustee filed his Emergency Application to Retain Broker *Nunc Pro Tunc* and to Sell Property "As Is" and Free and Clear of All Liens, Claims, Charges, Encumbrances and Interests (the Property Application). [Docket No. 9]. In the Property Application, the Trustee sought approval to sell the Ivy Run Property. [Docket No. 9, p. 3–4].

6.  On November 29, 2006, this Court issued an order granting the Property Application, which gave the Trustee and his real estate broker employed *nunc pro tunc* full and exclusive authority to effectuate the sale of the Ivy Run Property. [Docket No. 17]. This order stated that "any other liens and/or encumbrances against the property shall be, and hereby are, transferred to the balance of the Sale Proceeds." [Docket No. 17, p. 2].

7.  The Trustee's counsel certified that a true and correct copy of the Property Application was served on the persons identified by the Debtor as a comprehensive list of his creditors. [Docket No. 9, p. 6]. Thus, H.D.S., having been listed on Schedule F, was notified of the Property Application and chose not to object thereto.

8.  On December 12, 2006, the closing of the sale of the Ivy Run Property took place. After satisfying the undisputed liens on the Ivy Run Property and paying closing costs, $398,849.03 remained available for payment of other claims. [Adv. No. 07-03043, Adv. Doc. No. 72, p. 4, ¶ 12]. H.D.S.'s judgment lien was not paid out of these sale proceeds because the Trustee took the position that H.D.S.'s judgment lien was unenforceable and invalid. [Adv. No. 07-03043, Adv. Doc. No. 72, p. 7] [Tape Recording, 05/13/2010 Hearing at 5:01:22 p.m.]. Accordingly, the Trustee deposited the $398,849.03 into an account pending resolution as to whether H.D.S.'s judgment lien was valid and enforceable. [Adv. No. 07-03043, Adv. Doc. No. 72, ¶¶ 10 & 12].

4

9. On January 11, 2007, Atkinson filed a Motion to Reconsider the Order Granting the Property Application (the Motion to Reconsider). [Docket No. 34].

10. On January 31, 2007, H.D.S. filed a Response to the Motion to Reconsider (the Response). [Docket No. 43]. In the Response, H.D.S. represented to the Court that it approved of the sale because: (a) it stated that "as the sale of Ivy Run has already closed, Atkinson is essentially requesting the court to 'undo' a completed transaction." [Docket No. 43, p. 3, ¶ 38]; and (b) in the prayer paragraph, H.D.S. specifically requested that this Court deny the relief requested in the Motion to Reconsider. [Docket No. 43, p. 5]. Thus, H.D.S.'s Response had the effect of endorsing the actions taken by the Trustee to effectuate the sale of the Ivy Run Property.

11. On February 9, 2007, H.D.S.—knowing that $398,849.03 remained from the sale of the Ivy Run Property for distribution—filed the Adversary Proceeding to determine the extent, validity and priority of its judgment lien on the Ivy Run Property and the Ivy Run Lot. [Adv. No. 07-03043, Adv. Doc. No. 1]. H.D.S. sought a declaratory judgment from this Court that its judgment lien of $538,016.46 is valid so that its lien would attach to the entire $398,849.03, thereby requiring the Trustee to distribute all of these funds to H.D.S. The Trustee filed an answer to H.D.S.'s complaint on March 1, 2007. [Adv. No. 07-03043, Adv Doc. No. 9].

12. On February 22, 2007, the Trustee filed his Emergency Application to Retain Broker *Nunc Pro Tunc* and to Sell Lot "As Is" and Free and Clear of All Liens, Claims, Charges, Encumbrances and Interests (the Lot Application). [Docket No. 70]. In the Lot Application, the Trustee sought approval to sell the Ivy Run Lot.

13. On February 23, 2007, this Court issued an order granting the Lot Application, which gave the Trustee and his real estate broker full and exclusive authority to effectuate the sale of the Ivy Run Lot. [Docket No. 76]. This order stated that "any other liens and/or encumbrances against the 2406 Ivy Run Lot shall be, and hereby are, transferred to the balance of the Sale Proceeds." [Docket No. 76, p. 2].

14. The Trustee's counsel certified that a true and correct copy of the Lot Application was served on H.D.S.'s counsel, Barbara Hargis and Joe Tolbert. [Docket No. 70, p. 7–8]. Thus, H.D.S., through its counsel of record, was notified of the Lot Application. H.D.S. chose not to object to the Lot Application.

15. Eventually, the closing of the sale of the Ivy Run Lot took place. Once again, H.D.S's judgment lien was not paid out of these sale proceeds because the Trustee took the position that H.D.S.'s judgment lien was unenforceable and invalid. Accordingly, the proceeds were deposited into an account pending resolution as to whether H.D.S.'s judgment lien is enforceable and valid.

16. On May 22, 2007, the Trustee filed his Objection to the Debtor's Amended Claim of Exemptions. [Docket No. 121]. The Trustee objected to the Debtor's amended Schedule C "to the extent that Debtor seeks to claim, on behalf of his non-debtor spouse or their community estate, an exemption over and above the statutory limitation." [Docket No. 121, p. 2, ¶ 3].

17. On May 23, 2007, H.D.S. filed its First Amended Objection to the Debtor's Amended Claim of Exemptions, objecting to the Debtor's claim of exemptions on the Ivy Run Property and the Ivy Run Lot. [Docket No. 122]. H.D.S. asserted that the Debtor and

6

Atkinson (his non-debtor, former spouse) together were limited to an exemption of $125,000.00. [Docket No. 122, p. 2–3, ¶¶ 2, 6].

18. The parties thereafter negotiated a settlement, which was memorialized through an Agreed Order that was signed by the Court on June 22, 2007. [Docket No. 144]. The order required the Trustee to issue a check made payable to both the Debtor and Atkinson in the amount of $125,000.00, representing the maximum allowable homestead exemption pursuant to § 522(p). [Docket No. 144, p. 2, ¶ 2]. Further, the order required that funds generated from the sale of the Ivy Run Property and the Ivy Run Lot in excess of $125,000.00 were to be held by the Trustee until final resolution of the Adversary Proceeding. [Docket No. 144, p. 2, ¶ 4].

19. Pursuant to this Court's order, the Trustee paid the Debtor and Atkinson $125,000.00 out of the proceeds from the sale of the Ivy Run Property and the Ivy Run Lot. The remaining proceeds are still being held by the Trustee (the Excess Proceeds).

20. On August 15, 2007, H.D.S. filed a Motion for Summary Judgment in the Adversary Proceeding requesting that this Court declare it has a valid and enforceable lien on the Excess Proceeds. [Adv. No. 07-03043, Adv. Doc. No. 43]. On the same day, the Trustee also filed his Counter Motion for Summary Judgment requesting that this Court deny H.D.S.'s requested relief and issue a judgment that H.D.S.'s lien is invalid and unenforceable. [Adv. No. 07-03043, Adv. Doc. No. 44].

21. On December 17, 2007, this Court issued a Memorandum Opinion and accompanying order granting H.D.S.'s Motion for Summary Judgment and denying the Trustee's Motion for Summary Judgment. [Adv. No. 07-03043, Adv. Doc. No. 73]. This order

declared that H.D.S. has a valid and enforceable lien on the Excess Proceeds. [Adv. No. 07-03043, Adv. Doc. No. 73, p. 2].

22. On December 21, 2007, the Trustee filed a notice of appeal from this Court's ruling in the Adversary Proceeding to the United States District Court for the Southern District of Texas, Houston Division. [Adv. No. 07-03043, Adv. Doc. No. 76].

23. Subsequently, this Court, on its own initiative, made a certification for direct appeal to the Fifth Circuit. The foremost reason this Court made a certification for direct appeal is because the Fifth Circuit and certain Texas state courts have published conflicting opinions on the particular lien issue that is the basis of the underlying dispute between H.D.S. and the Trustee. [Adv. No. 07-03043, Adv. Doc. No. 96].[5] After the parties filed the appropriate pleadings with the Fifth Circuit, it decided to take the direct appeal.

24. The Excess Proceeds will be held in an account by the Trustee until the Fifth Circuit issues a ruling on the Adversary Proceeding. If the Fifth Circuit affirms this Court's ruling in the Adversary Proceeding that H.D.S. has a valid and enforceable lien, then the

---

[5] The Fifth Circuit has held that a homestead exemption does not prevent a judgment lienholder (like H.D.S.) from perfecting a lien on property that is exempt homestead; rather, it merely prevents the enforcement of that lien while the property is homestead. *See Henderson v. Belknap (In re Henderson)*, 18 F.2d 1305 (5th Cir. 1994). However, Texas courts have held that "Texas law is well settled that a judgment lien that has been properly abstracted cannot attach to a homestead as long as the property remains homestead." *Wilcox v. Marriott*, 103 S.W.3d 469, 473 (Tex. App.—San Antonio 2003, pet. denied); *The Cadle Co. v. Harvey*, 46 S.W.3d 282, 285 (Tex. App.—Fort Worth 2001, pet. denied); *United States v. Johnson*, 160 F.3d 1061, 1064–65 (5th Cir. 1998). The resolution of these conflicting rulings will be dispositive as to the validity of H.D.S.'s lien, and therefore: (1) Whether H.D.S.'s properly perfected judgment lien had already attached to the Ivy Run Property and the Ivy Run Lot by the Petition Date, thereby fully encumbering these properties (with H.D.S.'s lien attaching to all of the Excess Proceeds because the Debtor no longer asserted that the Ivy Run Property was his homestead after receiving the $125,000.00); or (2) Whether H.D.S.'s judgment lien had not attached as of the Petition Date (because the Debtor was still asserting a homestead claim), which in turn would mean that H.D.S. had no lien on the Excess Proceeds, that all valid liens on the Ivy Run Property and Ivy Run Lot have already been paid, and that the Excess Proceeds are totally unencumbered and available for distribution to unsecured creditors (including H.D.S.'s unsecured claim). [Adv. Doc. No. 96]. Further, the homestead exemption is a very important issue in Texas, and the conflicting decisions involve a fundamental disagreement regarding homestead law. *Border v. McDaniel (In re McDaniel)*, 70 F.3d 841, 843 (5th Cir. 1995) (stating that "[i]n Texas, homestead rights are sacrosanct"). Therefore, the Fifth Circuit's decision on the Trustee's appeal of this Court's decision concerns a matter of public importance to all Texans, worthy of a certification for direct appeal to the Fifth Circuit. *See* 28 U.S.C. 157(d)(2)(A)(i).

Trustee will distribute the Excess Proceeds to H.D.S. Conversely, if the Fifth Circuit reverses this Court's ruling, then necessarily H.D.S.'s lien will be invalid, and the Trustee will distribute the Excess Proceeds to unsecured creditors, after first paying any claims that are senior to unsecured ones.

25. On April 21, 2010, the Trustee filed his First Application for Interim Compensation (the Application) pursuant to 11 U.S.C. § 326(a). [Docket No. 252]. In the Application, the Trustee requests that this Court award him $57,302.65, the maximum commission allowed under Section 326(a), for disbursement of proceeds to undisputed lienholders, subject to additional compensation as allowed by the Final Report, whenever it is filed in the future. [Docket No. 252, p. 4 & 6]. The Trustee further requests to "be granted such other and further relief as is just." [Docket No. 252, p. 6].

26. On May 12, 2010, H.D.S. filed a response and objection to the Application. [Docket No. 258]. H.D.S. argues that the Ivy Run Property and the Ivy Run Lot were both fully encumbered when sold and that the Trustee should not have spent any time selling them because there are no sale proceeds available for distribution to unsecured creditors. [Docket No. 258, p. 3–5]. H.D.S. asserts that the Trustee is not entitled to commission under Section 326(a) because "[a] trustee may not be compensated out of encumbered assets in which a creditor has an undercollateralized security interest unless there is a showing under Section 506(c) that the professional's fees resulted in preservation of collateral that has benefited the secured creditor or the creditor consents to bearing the costs of the attorney's services." [Docket No. 258, p. 4, ¶ 16] (citing *In re Flagstaff Foodservice Corp.*, 739 F.2d 73 (2d Cir. 1984); *In re Darnell*, 834 F.2d 1263 (6th Cir. 1981); *In re Precast Structures, Inc.*, 122 B.R. 304 (S.D. Tex. 1990)).

27. On May 13, 2010, this Court held a hearing on the Application. At this hearing, H.D.S.'s counsel stated that if the Fifth Circuit reverses this Court's ruling in the Adversary Proceeding, H.D.S. would not object to the Application. [Tape Recording, 05/13/2010 Hearing at 5:37:17 p.m.]. The reason for this position is that a reversal would necessarily mean that the Excess Proceeds would be unencumbered funds which the Trustee could distribute to unsecured creditors. And, according to H.D.S., if the Trustee can make such a distribution, he could receive his commission from these same unencumbered funds. Therefore, H.D.S. would not object to the Trustee's compensation under § 326(a) regarding money disbursements to unsecured creditors. [Tape Recording, 05/13/2010 Hearing at 5:37:17 p.m.].

28. On May 13, 2010, at this same hearing, the Trustee testified credibly under oath regarding the following points:

    a. He believed that selling the Ivy Run Property and the Ivy Run Lot was reasonably likely to benefit the estate [Tape Recording, 05/13/10 Hearing at 5:02:22 p.m.] and necessary to the administration of the estate in order to "preserve what asset value there was" remaining in the properties. [Tape Recording, 05/13/10 Hearing at 5:02:09 p.m.].

    b. He honestly believed H.D.S.'s lien was invalid, thereby leaving plenty of equity in the Ivy Run Property and the Ivy Run Lot for unsecured creditors.[6] [Tape Recording, 05/13/2010 Hearing at 4:57:12; 4:58:45; 5:03:42 p.m.].

---

[6] Additionally, the Trustee testified under oath that he believes the Fifth Circuit will reverse this Court's decision in the Adversary Proceeding. The Trustee still has a good faith belief that H.D.S.'s lien does not attach to the Excess Proceeds because he continues to have a good faith belief that H.D.S.'s lien never attached to the Ivy Run Property and the Ivy Run Lot prior to the Petition Date. Further, he noted that if he had not challenged H.D.S.'s lien but rather abandoned the Ivy Run Property and the Ivy Run Lot, he would have been breaching his fiduciary duty to creditors of the estate. [Tape Recording, 05/13/2010 Hearing at 5:01:22 p.m.].

c. He consulted with another lawyer, who agreed that H.D.S.'s lien did not attach to the Homestead [Tape Recording, 05/13/2010 Hearing at 4:59:07 p.m.], thereby lending credence to his testimony that he has had a good faith belief that H.D.S's lien is invalid.

d. He believed that if he did not pursue the sale of the Ivy Run Property and the Ivy Run Lot, he would be breaching his fiduciary duty to the unsecured creditors. [Tape Recording, 05/13/2010 Hearing at 5:01:22 p.m.].[7]

e. The Ivy Run Property had been on the market for over a year and it would have been detrimental to the estate—and therefore, to creditors of the estate—if he failed to consummate the sale and generate proceeds for payment of claims. [Tape Recording, 05/13/2010 Hearing at 4:55:48; 5:00:36 p.m.].

f. If he had not been trying to sell this property, then mortgage interest, insurance payments, and $20,000 a year in property taxes would have accrued, thereby significantly depleting the value of the Ivy Run Property for either H.D.S. (if its lien is valid) or the unsecured creditors (if H.D.S.'s lien is invalid). [Tape Recording, 05/13/2010 Hearing at 5:00:35; 5:02:09 p.m.].

g. The buyer's offer on the Ivy Run Property was at a "good, good" price. [Tape Recording, 05/13/2010 Hearing at 4:55:24 p.m.].

---

[7] A Chapter 7 trustee has multiple fiduciary duties to the estate's creditors. *In re Melenyzer*, 140 B.R. 143, 154 (Bankr. S.D. Tex. 1992). Two duties that are pertinent to this case are: (1) a duty "to collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of the parties in interest"; and (2) a duty to "maximize distribution to creditors." 11 U.S.C. § 704(1); *Id.*

h. H.D.S. chose not to object to the sales, and expressly approved of the sale of the Ivy Run Property in the Response. [Tape Recording, 5/13/2010 Hearing at 4:56:40; 4:58:15 p.m.].

29. On May 13, 2010, also at the Application hearing, Heather Potts (Potts), the attorney for the Trustee, made an alternative argument that even if this Court rules against the Trustee under Section 326(a), the Trustee is entitled to compensation pursuant to Section 506(c).[8] Potts argued that since the Trustee's services provided H.D.S. with a benefit, the Court should compensate the Trustee under 506(c) for the full amount of compensation sought in the Application. [Tape Recording, 05/13/2010 Hearing at 5:18:37 p.m.].

30. On July 12, 2010, pursuant to this Court's order requiring the Trustee to file information [Docket No. 262], the Trustee filed a statement of claim information. [Docket No. 263]. The Trustee represented that $1,799,389.66 of proceeds have come into the estate since the Trustee was appointed, and that the Trustee has distributed $1,286,755.11 to fifteen different claimants as of July 9, 2010.[9] [Docket No. 263, ¶¶ 1–3]. Thus, $512,634.55 in Excess Proceeds is currently being held by the Trustee pending resolution of the Adversary Proceeding on appeal.[10] The Trustee further represented that a total of $1,405,434.50 in allowed unsecured claims have not yet been paid as of July 9, 2010. [Docket No. 263, ¶ 4]. The only secured claim that has not been paid, aside from the

---

[8] H.D.S. first raised the proposition that the Trustee might be entitled to compensation pursuant to Section 506(c) in its response and objection to the Application. [Docket No. 258, p. 4, ¶ 16]. Therefore, the Trustee's alternative argument did not unfairly surprise H.D.S.

[9] The Trustee set forth in chart form a list of each of the fifteen claimants to which it has made distributions, the amount of each claim paid, the claimant/payee classification, and certain miscellaneous notes regarding the distributions. The Trustee represented that he paid off Encore Bank, the first lienholder, from the sale of the Ivy Run Property with a distribution of $966,592.47. [Docket No. 263, ¶ 3.]

[10] The $512,634.55 represents the sum of $398,849.03 (*i.e.*, the proceeds remaining after the sale of the Ivy Run Property) and $113,785.52 (*i.e.*, the proceeds remaining after the sale of the Ivy Run Lot).

potentially secured claim asserted by H.D.S., is a secured claim asserted by the IRS in the amount of $192,335.19. [Docket No. 263, ¶ 5].

## III. CREDIBILITY OF WITNESSES

On May 13, 2010, this Court held a hearing on the Application. W. Steve Smith—the Chapter 7 Trustee in this case (as previously defined in this Opinion)—testified regarding his sale of the Ivy Run Property and the Ivy Run Lot. He forthrightly presented his rationale for undertaking to sell these properties, and he reviewed the process by which he executed the sales. [Finding of Fact No. 28]. He further explained the necessity of effectuating these sales in timely manner and the benefits that accrued to creditors of the estate due to his diligent action. [Finding of Fact No. 28]. The Trustee's testimony was substantiated by the statement of claim information subsequently filed with this Court and remained consistent with documents previously filed in this case. [Finding of Fact No. 30]. Accordingly, the Court finds the Trustee to be a very credible witness and gives substantial weight to the testimony he gave before this Court.

## IV. CONCLUSIONS OF LAW

### A.  Jurisdiction and Venue

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a).  This contested matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K), (O), and the general "catch-all" language of 28 U.S.C. § 157(b)(2).  *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *De Montaigu v. Ginther (In re Ginther Trusts)*, Adv. No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry

13

list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance"). Venue is proper pursuant to 28 U.S.C. § 1408.

**B. The Trustee is entitled to reasonable compensation pursuant to Sections 330 and 326(a) of the Bankruptcy Code.**

    1. The Trustee provided actual, necessary services that were reasonably likely to benefit the Debtor's estate and not unnecessarily duplicative.

Section 330(a)(1) provides that "the court may award to a trustee . . . reasonable compensation for actual, necessary services rendered by the trustee . . . ." 11 U.S.C. § 330(a)(1). Further parameters are set forth in Section 330(a)(4), which prohibits the court from allowing compensation for "(i) unnecessary duplication of services; or (ii) services that were not—(I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case." 11 U.S.C. § 330(a)(4). In the case at bar, the Trustee provided actual, necessary services by filing the Property Application and Lot Application with this Court [Findings of Fact Nos. 5 & 12], obtaining permission from this Court to sell the Ivy Run Property and the Ivy Run Lot [Findings of Fact Nos. 6 & 13], executing the sales of these properties [Findings of Fact Nos. 8 & 15], and distributing funds to undisputed lienholders [Finding of Fact No. 8]. These services were not unnecessarily duplicative, as the Court granted the Trustee and his broker exclusive authority to effectuate the sales. [Findings of Fact Nos. 6 & 13].

Further, the Trustee's services in selling the properties and distributing the proceeds were reasonably likely to—and, in fact, did—benefit the Debtor's estate. The Trustee has already distributed proceeds to undisputed lienholders [Finding of Fact No. 8], and he continues to hold the Excess Proceeds for distribution to either H.D.S. or unsecured creditors, depending on the outcome of the Adversary Proceeding on appeal [Finding of Fact No. 24].

Finally, the Trustee's actions were necessary to the administration of the case. At the time the Trustee undertook to sell the properties, he had a good faith belief that H.D.S.'s judgment did not attach to the Ivy Run Property and the Ivy Run Lot and, thus, believed there was substantial equity in the properties to distribute to unsecured creditors. [Finding of Fact No. 28(b)]. He also believed that if he did not pursue the sale of the properties, he would be breaching his fiduciary duty to the unsecured creditors. [Finding of Fact No. 28(d)]. Thus, the Trustee rightfully believed that effectuating these sales was necessary to the administration of the estate in order "to preserve what asset value there was" remaining in the properties. [Finding of Fact No. 28(a), (e) & (f)]. Accordingly, the Court may award the Trustee reasonable compensation for the services he provided in selling the Ivy Run Property and the Ivy Run Lot.

2. By disbursing moneys to secured creditors, the Trustee is eligible for a commission under Section 326(a).

Any compensation awarded to the Trustee under Section 330 must necessarily be in the form of a commission (*i.e.*, a percentage of monies disbursed by the trustee to parties in interest) calculated in accordance with Section 326. 11 U.S.C. § 330(a)(7) ("In determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326."). Section 326(a) provides the statutory maximum for the Trustee's commission and specifies the types of disbursement upon which his commission may be based. The provision expressly states that:

> In a case under chapter 7 or 11, the court may allow reasonable compensation under Section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such money in excess of $1,000,000 upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but *including holders of secured claims*.

11 U.S.C. § 326(a) (emphasis added).

Section 326(a) makes clear that for the Trustee to be eligible to receive a commission, he must have disbursed or turned over moneys to "parties in interest," which expressly includes the holders of secured claims. *In re Guyana Dev. Corp.*, 201 B.R. 462, 474 (Bankr. S.D. Tex. 1996) ("[I]t is appropriate to include the full amount of the proceeds of the sale of encumbered property in the basis for the percentage computation."); *In re Ward*, 366 B.R. 470, 472 (Bankr. W.D. Pa. 2007) (holding that a trustee is "entitled to include funds turned over to secured creditors in the base upon which his compensation is calculated."). In the case at bar, the Trustee has disbursed moneys to certain secured creditors. [11] By selling the Ivy Run Property and the Ivy Run Lot, the Trustee generated proceeds from these two sales, and then oversaw the disbursement of some of these proceeds to certain undisputed lienholders. [Findings of Fact Nos. 8 & 30]. Additionally, he is holding the Excess Proceeds for distribution to H.D.S. if the Fifth Circuit affirms this Court's ruling in the Adversary Proceeding. [Findings of Fact Nos. 21, 24 & 30]. Thus, having disbursed moneys to undisputed secured claimants, the Trustee has done what is required to qualify for a commission under Section 326(a).

---

[11] In *Pritchard*, the Fifth Circuit held that "moneys" in Section 326(a) is afforded the plain meaning of the word. *Pritchard v. U.S. Trustee (In re England)*, 153 F.3d 232, 235–37 (5th Cir. 1998). Therefore, the Fifth Circuit defines moneys as "something generally accepted as a medium of exchange, a measure, value or means of payment," and "coins and paper currency used as circulating medium of exchange." *Id.* at 235. In this case, the Trustee's disbursements clearly meet the definition of "moneys" under Section 326(a). The Trustee sold the Ivy Run Property and the Ivy Run Lot, and the proceeds from these sales constitute moneys, some of which the Trustee has already distributed to undisputed lienholders and the remainder of which (*i.e.*, the Excess Proceeds) he holds in an account pending the Fifth Circuit's determination on appeal of whether H.D.S. has a valid judgment lien. [Findings of Fact Nos. 8, 15 & 24].

3.  <u>There is no absolute bar to compensation if the Trustee distributes proceeds to secured creditors holding a lien on fully encumbered property.</u>

Nevertheless, H.D.S. argues that this Court should not award one dime to the Trustee because the real property which he sold (*i.e.*, the Ivy Run Property and the Ivy Run Lot) was fully encumbered and, therefore, there is no benefit to unsecured creditors. Stated differently, H.D.S. argues that no trustee, including the Trustee in the case at bar, should receive a commission based on his disbursements to creditors unless he sells totally unencumbered property or property that is encumbered but nevertheless has equity which, when liquidated, is used to pay unsecured claims.[12] The Court acknowledges that certain courts outside the Southern District of Texas have concluded, as a matter of judicially created law, that a trustee is not entitled to payment under Section 326(a) if he disburses proceeds to secured creditors holding a lien on fully encumbered property.[13] These courts operate on the premise that "where a trustee undertakes to sell fully encumbered property, or property with only a slight equity in it, or when the trustee abandons the property to a secured claimant, there is no actual or constructive disbursement and the trustee cannot collect any compensation." *B & L Enters.*, 26 B.R. at 223. For the reasons set forth below, the Court disagrees with such an absolute bar to receipt of a commission under Section 326(a).

---

[12] H.D.S. cites several cases in support of his position that the Trustee should not be awarded compensation under Section 326(a), including one from another bankruptcy court within the Southern District of Texas. [Finding of Fact No. 26]. The Court chooses not to rely on this case, however, as it addresses the issuance of attorney's fees, rather than trustee's fees. *See In re Precast Structures*, Inc. 122 B.R. 304, 305 (Bankr. S.D. Tex. 1990) ("[A]ttorney's fees cannot be awarded from assets in which a creditor has an undercollateralized security interest . . . .").

[13] *E..g., In re Bob Grissett Golf Shoppes, Inc.,* 50 B.R. 598, 602 (Bankr. E.D. Vir. 1985) ("[I]f the trustee elects to retain and sell such [secured] property, he cannot intrench upon the amount of the secured debt for the payment of any of the expenses of administration such as commissions and similar costs."); *In re Lambert Implement Co.,* 44 B.R. 860, 861 (Bankr. W.D. Ky. 1984); *In re B & L Enters., Inc.,* 26 B.R. 220, 223 (Bankr. W.D. Ky. 1982); *In re Truitt,* 15 B.R. 169, 170 (N.D. Ga. 1981) ("The trustee is not entitled to collect his commission from secured property administered in bankruptcy.").

First, the statute itself does not state that the Trustee may receive a commission if, and only if, he disburses moneys to *unsecured* creditors. Just the contrary: the statute expressly qualifies the Trustee for a commission if he disburses moneys to *secured* creditors. 11 U.S.C. § 326(a); *Guyana Dev. Corp.*, 201 B.R. at 474. In fact, the only bar to the Trustee receiving a commission is when he disburses moneys to a debtor. The plain language of Section 326(a) states that a court may allow compensation "upon all moneys disbursed or turned over in the case by the trustee to parties in interest, *excluding the debtor*, but including holders of secured claims." (emphasis added). Indeed, "[t]he plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair*, 489 U.S. 235, 242 (1989). Because Section 326(a) expressly excludes debtors, and expressly includes parties in interest (a phrase which certainly includes unsecured creditors as well as secured creditors), there can be no doubt that this provision allows a trustee to qualify for compensation so long as that trustee has disbursed moneys to either unsecured creditors or secured creditors—or both.

Second, in addition to this statute's plain meaning, the legislative history of Section 326(a) indicates that this Court may award the Trustee reasonable compensation whether or not there was equity in the Ivy Run Property and Ivy Run Lot. *Ward*, 366 B.R. at 472. Congress stated in its committee reports that:

> "[i]t should be noted that the base on which the maximum fee is computed includes monies turned over to secured creditors, to cover the situation where the Trustee liquidates property subject to a lien and distributes the proceeds. It does not cover cases in which the Trustee simply turns over the money to the secured creditor, nor where the Trustee abandons the property and the secured creditor is permitted to foreclose."

S. REP. NO. 95-989, at 37–38 (1978), *reprinted* in 1978 U.S.C.C.A.N. 5787, 5824. If the Fifth Circuit affirms this Court's ruling in the Adversary Proceeding—which would necessarily mean

that there was never any equity in the Ivy Run Property and the Ivy Run Lot—this Committee Report nevertheless suggests that the Trustee qualifies for compensation. First, the Trustee sold both the Ivy Run Property and the Ivy Run Lot, thereby liquidating the properties. [Findings of Fact Nos. 8 & 15]. Second, the Trustee, having received moneys from the sale of these properties, disbursed some of these proceeds to undisputed lienholders. [Finding of Fact No. 8]. Third, if the Fifth Circuit affirms this Court's decision in the Adversary Proceeding, the Excess Proceeds are subject to H.D.S's lien and the Trustee will distribute the funds held in his account to H.D.S., in its capacity as a secured creditor. [Finding of Fact No 24]. The above cited legislative history contemplates all of these circumstances, which involve solely distribution of moneys to secured claimants. Accordingly, both the text of the statute and of the legislative history undermine H.D.S's contention that unsecured claims have to be paid to qualify the Trustee for a commission.[14]

Finally, Fifth Circuit case law relied on by the courts in *Lambert*, *B & L Enterprises*, and *Truitt* actually disfavors H.D.S.'s conclusion. These cases cite *Gugel v. New Orleans*, 239 F. 676 (5th Cir. 1917) for the proposition that a trustee may not collect commissions from secured property administered in bankruptcy. *Lambert*, 44 B.R. at 861; *B & L Enters.*, 26 B.R. at 223; *Truitt*, 15 B.R. at 170. The language in *Gugel*, however, does not suggest an absolute bar to recover when a trustee sells fully encumbered property:

> It does not follow that the trustee is never entitled to compensation, where he sells mortgaged property, and where the property sells for no more than enough to pay the liens on it. If there is a **real or apparent equity** in the property for the estate,

---

[14] H.D.S. does not dispute that if the Fifth Circuit reverses this Court's ruling in the Adversary Proceeding and holds that H.D.S.'s lien is invalid, the Excess Proceeds will then belong to the unsecured creditors. [Finding of Fact No. 27]. Under these circumstances, H.D.S. would not oppose the Application, but rather would expect the Trustee to disburse moneys to these unsecured creditors. [Finding of Fact No. 27]. In H.D.S.'s view, such a disbursement would then unequivocally provide a basis for the Trustee to receive a commission under Section 326(a). *See Pritchard*, 153 F.3d at 235–37.

> and so reasonable grounds for administering it in bankruptcy, the lienholder should be charged with the reasonable costs of such proceedings in the bankruptcy court as are appropriate to foreclosing the lien and selling the incumbered [sic] property . . . .

239 F. at 679 (emphasis added).

In *Gugel*, although the trustee sold property "on which there were liens and mortgages greater in amount than the amount realized from the sale of the property," the Fifth Circuit nevertheless awarded the trustee compensation in this case because "there was an apparent equity in the incumbered [sic] property to the bankrupt estate." *Id.* at 677, 679. Thus, the Fifth Circuit instructs this Court to evaluate the surrounding facts and circumstances in the case at bar to determine whether there was any perceived benefit to the estate when the Trustee undertook to sell the Ivy Run Property and the Ivy Run Lot.[15] Indeed, the court in *Lambert*, although holding that a trustee who sells fully encumbered property is generally not entitled to a Section 326(a) commission, reserved the right to consider special circumstances, such as are present in the case at bar, which would warrant a departure from its holding. *Lambert*, 44 B.R. at 862–63 ("[T]rustees may have had some sound but undocumented reasons for proceeding with the disposition of properties in the expectation of benefit to unsecured creditors. Taking into account the realities of case administration, we therefore invite such of these trustees as may wish to do so to present any special circumstances or conditions to the court for its consideration.").

---

[15] Indeed, at least one bankruptcy court within the Fifth Circuit has noted the importance of evaluating trustees decisions in light of the information available at the time the decisions are made. *In re Melenyzer*, 140 B.R. 143, 155 (Bankr. W.D. Tex. 1992) ("Trustees should not be punished, after the fact, for judgment calls which, at the time they were made, seemed reasonable. Adopting such a "gotcha" policy would, in the long run, do more to jeopardize than to encourage efficient administration of bankruptcies by making trustees unduly tentative about every decision and action they take.") (internal quotations and citations omitted).

4.  Based on the facts and circumstances present at the time the Trustee sold the Ivy Run Property and the Ivy Run Lot, there was apparent equity for the estate in selling these properties.

      i.  The Trustee had a good faith belief that H.D.S.'s judgment lien was invalid.

At the time he sold the property, the Trustee in this case had a good faith belief that the Ivy Run Property and the Ivy Run Lot were not fully encumbered. [Finding of Fact No. 28(b), (c)]. Indeed, the Trustee testified multiple times that he believed H.D.S.'s judgment lien has always been invalid, thereby leaving substantial equity in the Ivy Run Property and the Ivy Run Lot for unsecured creditors. [Finding of Fact No. 28(b)]. The Trustee consulted with another attorney who advised him that the lien should not attach as a matter of law, lending further credence to his testimony that he believed H.D.S.'s lien was invalid. [Finding of Fact 28(c)]. Additionally, neither the Trustee nor H.D.S. could have definitely known whether or not H.D.S.'s lien was valid at the time of the sale. Specifically, since the Fifth Circuit and Texas state courts have published conflicting decisions on the validity of judgment liens on homesteads—which is the very nature of the dispute between H.D.S. and the Trustee—neither party was certain that the Homestead was fully encumbered until this Court issued its ruling in the Adversary Proceeding. [Findings of Fact No. 21]. The Adversary Proceeding is currently at the Fifth Circuit on appeal, and, thus, this Court's ruling could be overturned. [Findings of Fact No. 23 & 24]. If the Fifth Circuit reverses this Court's decision, the Homestead would necessarily be unencumbered. Thus, the record demonstrates that the Trustee has had a good faith belief that the Ivy Run Property and the Ivy Run Lot were not fully encumbered.[16] The

---

[16] Indeed, the Trustee testified under oath that he believes the Fifth Circuit will reverse this Court's decision in the Adversary Proceeding, holding that H.D.S.'s lien on the Homestead is invalid and, therefore, does not attach to the Excess Proceeds. [Finding of Fact No. 28(b)]. The substantial time and effort the Trustee has spent writing briefs and making oral arguments on appeal underscores his good faith belief.

Trustee's good faith belief that H.D.S.'s lien on the Ivy Run Property and the Ivy Run Lot was invalid—and therefore that these properties had substantial equity—makes his decision to spend time and energy selling the property eminently reasonable at the time he took such action.

> ii.  *The Trustee was upholding his fiduciary duty to the unsecured creditors by selling the Ivy Run Property and the Ivy Run Lot.*

The trustee in a bankruptcy case is the representative of the estate. 11 U.S.C. § 323(a). As the representative of any Chapter 7 estate, the trustee has multiple fiduciary duties to the estate's creditors. *In re Melenyzer*, 140 B.R. at 154. The primary duty of a Chapter 7 trustee is to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(1); *Dodson v. Huff (In re Smyth)*, 207 F.3d 758, 761 (5th Cir. 2000); *Melenyzer*, 140 B.R. at 154. A Chapter 7 trustee also has a fiduciary duty "to maximize distribution to creditors." *Melenyzer*, 140 B.R. at 154. Lastly, a Chapter 7 trustee must act reasonably in performing his fiduciary duties to the estate's creditors. *Id.* at 154–55.

In this case, the Trustee testified that he believed if he did not pursue the sale of the Ivy Run Property and the Ivy Run Lot, he would be breaching his fiduciary duty to the unsecured creditors. [Finding of Fact No. 28(d)]. The evidence in the record illustrates that his belief was quite reasonable. The Trustee testified that the Ivy Run Property had been on the market for over a year before the eventual buyer came along. [Finding of Fact No. 28(e)]. If the Trustee had waited for both this Court and the Fifth Circuit to tell him whether or not the Ivy Run Property was fully encumbered, he would have lost the only buyer the Ivy Run Property had within that year, and he testified that the buyer's offer on the property was a "good, good" price. [Finding of Fact No. 28(e), (g)]. Further, if the Trustee had not gone ahead with the sale, per annum property taxes of $20,000.00, mortgage interest, and insurance payments would have accrued, thereby

22

depleting the Ivy Run Property's value to either H.D.S. or the unsecured creditors. [Finding of Fact No. 28(f)]. If the Trustee had waited to sell the properties until final resolution of the Adversary Proceeding on appeal, the estate would have already been depleted by over $60,000 in property taxes alone. [Finding of Fact No. 28(f)]. By closing on the sale of the Ivy Run Property and the Ivy Run Lot, the Trustee was able to satisfy the undisputed liens and deposit the Excess Proceeds into an account pending resolution of whether H.D.S's lien is valid and enforceable. [Findings of Fact Nos. 8 & 15]. Accordingly, the Court concludes by selling the Ivy Run Property and the Ivy Run Lot, the Trustee faithfully executed both his fiduciary duty to maximize distributions to all creditors of the estate—including H.D.S—as well as his duty to liquidate tangible property of the estate to money, make appropriate distributions under applicable law, and close the case as quickly as possible. 11 U.S.C. § 704(1). In light of the foregoing facts, the Court further concludes that the Trustee acted with reasonable care in discharging these fiduciary duties.

5. Even if there was no apparent equity for the estate in selling the Ivy Run Property and the Ivy Run Lot, H.D.S. waived its right to object to the Trustee receiving compensation pursuant to Section 326(a).

When H.D.S. chose not to object to the sale of the Ivy Run Property and the Ivy Run Lot, it waived its right to object to the Trustee's compensation. *Colarusso v. Ragosa (In re Colarusso)*, 280 B.R. 548, 558–69 (Bankr. D. Mass. 2002); *United States v. Olano*, 507 U.S. 725, 733 (1993) (defining wavier as the intentional relinquishment of a known right). Further, because the Trustee relied on H.D.S's waiver, H.D.S. is estopped from revoking it. *Ragosa*, at 559–60. In *Ragosa*, the defendant waived her right to assert a property interest in the debtor's sold property because she: (1) received notice of the sale; (2) participated in the sale personally; and (3) chose not to object to the sale. *Id.* at 558–59. Similarly, H.D.S. waived its right to object

23

to the Trustee's reasonable compensation for selling the Ivy Run Property and Ivy Run Lot. First, H.D.S. was notified of the sale of the Ivy Run Property and the Ivy Run Lot through service of the Property Application and the Lot Application. [Findings of Fact Nos. 7 & 14]. Second, similar to the debtors' participation in the sale in *Ragosa*, H.D.S. expressly approved of the sale when: (a) it stated in the Response that "as the sale of Ivy Run has already closed, Atkinson is essentially requesting the court to 'undo' a completed transaction"; and (b) it expressly requested in the prayer paragraph that the Court deny the requested relief, which was tantamount to supporting the sale of the Ivy Run Property. [Finding of Fact No. 10]. Third, H.D.S. chose not to object to either the Property Application or the Lot Application, further evidencing its approval of the sale. [Findings of Fact Nos. 7 & 14]. As a result of H.D.S.'s failure to object to both the sale of the Ivy Run Property and Ivy Run Lot even though it received notice, and, moreover, as a result of its opposition to Atkinson's Motion to Reconsider—which in effect was supporting the Trustee's sale of the Ivy Run Property—H.D.S. waived its right to now object to the Trustee's request for compensation.

Further, H.D.S. is estopped from revoking its waiver. In order to support a finding of estoppel, there must be: (1) a representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made; (2) an act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made; and (3) detriment to such person as a consequence of the act or omission. *Ragosa*, 280 B.R. at 559–60.[17] First, in failing to object to the sale of both the Ivy Run Property and the Ivy Run Lot, H.D.S. impliedly represented that it understood the Trustee would

---

[17] *See also Kaneb Servs., Inc. v. Fed. Sav. & Loan Ins. Corp.*, 650 F.2d 78, 81 (5th Cir. 1981) ("[U]nder the doctrine of equitable estoppel a party with full knowledge of the facts, which accepts the benefits of a transaction, contract, statute, regulation, or order may not subsequently take an inconsistent position to avoid the corresponding obligations or effects.").

receive compensation for the sales. [Findings of Fact Nos. 7 & 14]. Its express approval of the sale of the Ivy Run Property—in the form of its opposition to the Motion to Reconsider—is further evidence of its consent. [Finding of Fact No. 10]. Second, H.D.S.'s representations in the Response and its failure to object to the Property Application or the Lot Application facilitated the Trustee's sale of the Ivy Run Property and the Ivy Run Lot. [Findings of Fact Nos. 8 & 15]. As a result of the Trustee's efforts, H.D.S. will receive a cash distribution (if its lien is held to be valid) without spending any of its own time or money to successfully liquidate the properties. This is especially helpful because H.D.S. is not in the business of selling real estate.[18]

Finally, the Trustee relied on H.D.S.'s representation to his detriment. Since H.D.S. did not object to either sale and expressly approved of the sale of the Ivy Run Property, the Trustee had no reason to believe H.D.S would oppose his request for compensation under Section 326(a). [Findings of Fact Nos. 7, 10 & 14]. Therefore, out of the belief that the sales of the Ivy Run Property and the Ivy Run Lot would benefit the estate, the Trustee spent time and money to successfully sell these properties. If this Court were to deny the Trustee some amount of reasonable compensation, the Trustee would receive no compensation for his services that benefited H.D.S. This Court will not allow H.D.S. to benefit at the Trustee's expense when H.D.S. had ample time to object and chose not to do so. Accordingly, for all of these reasons, H.D.S. has waived its right to object to the Trustee receiving compensation pursuant to Sections 326(a), 330 and 331; and, H.D.S. is estopped from now complaining about any compensation that the Trustee receives under this statute.

---

[18] Since the full name of H.D.S. is H.D. Smith Wholesale Drug Co., this Court may reasonably infer that it is not in the business of selling real estate. [Docket No. 1].

In sum, for all the reasons set forth above, the Court finds that the Trustee is entitled to reasonable compensation under Section 330 in the form of a Section 326(a) commission.

### C.  Calculating the Amount of "Reasonable" Compensation Owed to the Trustee

1. <u>In computing the statutory maximum commission under Section 326(a), the Court will only consider the disbursement of proceeds to H.D.S.</u>

As previously noted, the computation set forth in Section 326(a) provides an absolute ceiling on the amount of commission a trustee may be awarded for his disbursement to creditors of the bankruptcy estate. In the Application, the Trustee seeks interim compensation of $57,302.65, representing the maximum statutory commission allowed under Section 326(a) for his disbursement of proceeds to undisputed lienholders. [Finding of Fact No. 25]. The Court agrees that the Trustee is entitled to a commission based on his disbursement of proceeds to these creditors. Indeed, this Court has already held that there is no absolute bar to a trustee receiving compensation pursuant to Sections 330 and 326 when he distributes proceeds from the sale of fully encumbered property.  It does not follow, however, that a trustee is entitled to payment of the *full* amount of commission calculated under the statutory scheme in Section 326(a) from any one secured creditor to which the trustee distributes funds. To require that one secured creditor pay the full amount of the commission would be unfair.

In the instant case, the Trustee applied and received approval from this Court to sell both the Ivy Run Property and the Ivy Run Lot. [Findings of Fact Nos. 5, 6, 12 & 13]. After closing on the sale of these properties, the Trustee distributed $1,286,755.11 to satisfy undisputed liens on the properties (including both secured and administrative claims). [Finding of Fact No. 30]. A total of $512,634.55 in Excess Proceeds is currently being held by the Trustee pending resolution on appeal of whether H.D.S. has a valid lien on the proceeds. [Finding of Fact No. 30].  H.D.S. has a judgment against the Debtor, which is the source of the disputed lien on the properties, in

26

the amount of $538,016.46. [Finding of Fact No. 2]. Thus, the Trustee is holding all of the

Excess Proceeds for the benefit of H.D.S. assuming the Fifth Circuit affirms this Court's ruling

and holds that H.D.S. has a valid and enforceable lien on the proceeds. To allow the Trustee to

be paid the maximum commission allowed by Section 326(a) out of the Excess Proceeds for his

distribution of $1,286,755.11 to other claimants would be requiring H.D.S.—assuming the Fifth

Circuit affirms that it is a secured creditor with a valid and enforceable lien—to bear the cost of

the administration of the estate as it relates *to other secured creditors*. Such a result should not be

permitted.[19] Thus, the Court, exercising its discretion, finds that the Trustee may be compensated

under Section 326(a) based only on his disbursement of the $512,634.55 in Excess Proceeds to

H.D.S.[20]  Pursuant to the computation set forth in Section 326(a), the Trustee is entitled to a

maximum amount of $28,881.73.[21]

---

[19] If the Trustee had wanted to receive compensation for his disbursement to the other secured creditors, then he could have prior filed an interim application under either Sections 326, 330, and 331 or Section 506(c) prior to distribution of any proceeds to undisputed lienholders from the sale of the Ivy Run Property and Ivy Run Lot. If any of the undisputed lienholders had lodged an objection, then the Trustee could have requested a hearing just as he did with respect to H.D.S's objection.

[20] Even though the Trustee is still holding the Excess Proceeds in an account, these funds will be disbursed to H.D.S. if and as soon as the Fifth Circuit affirms this Court's ruling in the Adversary Proceeding on appeal. [Findings of Fact Nos. 8 & 15]. Additionally, the Trustee is only seeking interim compensation in the Application for the maximum amount allowed pursuant to Section 326(a), subject to additional compensation as allowed by the Final Report. [Finding of Fact No. 25]. Section 331, which addresses interim compensation, provides that "[a] trustee . . . may apply . . . for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title.  After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement." Section 331 does not limit payment of interim compensation to a percentage of the amount of money "disbursed" prior to the application date, but rather requires a trustee to have rendered "services" prior to the time the interim fee application is filed. If Congress had intended for trustees to receive compensation only after disbursement, which is usually the last and most routine of the "services" performed by a trustee in the process of liquidating property, Congress would have clearly stated so in Section 331—for it was clearly aware of the concept of disbursement. *In re Tom Carter Enters.*, 49 B.R. 243, 245 (Bankr. C.D. Cal. 1985) (noting that Congress was clearly aware of the concept of disbursement, as evidenced by its use of the term in establishing the statutory maximum under Section 326, but deliberately chose to not tie the concept of disbursement to the question of when interim compensation may be paid). Indeed the legislative history of Section 331 indicates that "[t]he only affect of this section is to remove any doubt that officers of the estate may apply for, and the court may approve, compensation and reimbursement during the case, instead of being required to wait until the end of the case, which in some instances may be years." *Id.* Thus, in the case at bar, the Trustee may receive interim compensation based on the Excess Proceeds received from the sale of the Ivy Run Property and Ivy Run Lot that are to be disbursed to either H.D.S. or the Debtor's unsecured

27

**2. Because it would be disproportionate or inequitable given the surrounding facts and circumstances to award the Trustee the statutory maximum amount of commission for its disbursement of proceeds to H.D.S., the Court will incorporate a *Johnson*-type analysis to determine the exact amount of compensation to award the Trustee.**

Courts have discretion as to whether they will award the maximum amount of commission prescribed under Section 326(a). 11 U.S.C. § 326(a) (". . . the court **may** allow reasonable compensation under section 330 of this title of the trustee for the trustee's services . . . **not to exceed** [the computation set forth above].") (emphasis added); *Phillips*, 392 B.R. at 383.[22] Pre-BAPCPA,[23] courts were required to evaluate the *Johnson*-type[24] factors set forth in Section 330(a)(3) when determining whether to award a trustee the full amount of compensation sought.[25] While the pre-BAPCPA version of Section 330(a)(3) applied equally to both Chapter 7

---

creditors upon resolution of the Adversary Proceeding on appeal. *Id.* at 244–46 (holding that a trustee was entitled to interim compensation for services rendered, the maximum to be based upon the funds received and to be disbursed, and that actual disbursement is not a prerequisite to the award of fees to a trustee in bankruptcy); *In re Prairie Cent. Ry. Co.*, 87 B.R. 952, 957 (Bankr. N.D. Ill. 1988) ("Reasonable interim compensation can be allowed notwithstanding the literal language of Section 326(a) requiring that the trustee receive compensation only *after* disbursement.").

[21] The statute provides for: (1) 25% on the first $5,000, which is $1,250.00; (2) 10% on any amount in excess of $5,000 but not in excess of $50,000, which is 10% of $45,000—or $4,500; and 5% on any amount in excess of $50,000 but not in excess of $1,000,000, which is 5% of $462,634.55 ($512,634.55 - $50,000)—or $23,131.73. The sum of $1,250.00 plus $4,500.00 plus $23,131.73 equals $28,881.73.

[22] Indeed, Section 330(a)(2) generally provides that, "[t]he court may, on its own motion or on the motion of . . . any other party in interest, award compensation that is less than the amount of compensation that is requested."

[23] BAPCPA is the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub. L. 109-8, 119 Stat. 23, enacted April 20, 2005), which made significant changes to, among other things, the qualification for and administration of a Chapter 7 bankruptcy.

[24] In *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), the Fifth Circuit set forth the following factors to be considered in awarding a reasonable fee: (1) time and labor involved; (2) novelty and difficulty of the questions; (3) skill requisite to perform the legal services properly; (4) the preclusion of other employment due to acceptance of the case; (5) customary fees in similar cases in the community; (6) the contingent versus fixed nature of the fee; (7) time limitation imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorney(s); (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases, within or without the Circuit. *Id.* at 717–19.

[25] Specifically, pre-BAPCPA Section 330(a)(3) provided that: "[i]n determining the amount of reasonable compensation to be awarded, the court **shall** consider the nature, the extent, and the value of such services, taking into account all the relevant factors, including (A) the time spent on such services; (B) the rates charged for such

28

and Chapter 11 trustees, the post-BAPCPA version limits mandatory evaluation of the enumerated factors to requests for compensation by an "examiner, trustee under chapter 11, or professional person." 11 U.S.C. § 330(a)(3); *Coyote*, 400 B.R. at 91; *Phillips*, 392 B.R. at 382. The express omission of Chapter 7 trustees from this list indicates Congress' intention to alleviate courts of the burden of undertaking a *Johnson*-type analysis in every consumer case. *Coyote*, 400 B.R. at 94.[26] Thus, an award of trustee compensation pursuant to Section 330 may now start and end with the statutory maximum set forth in Section 326(a).[27]

Under the current statutory scheme, courts may—and should—consider the surrounding facts and circumstances in determining whether to award less than the maximum amount of commission prescribed under Section 326(a). *Coyote*, 400 B.R. at 95; *Phillips*, 392 B.R. at 385 (holding that in the absence of clear and express statutory language, trustee compensation should not be afforded an absolute presumption of maximum compensation pursuant to Section 326(a)). Such an inquiry may, but for the reasons set forth above is not required to, include consideration of the Section 330(a)(3) factors. *Coyote*, 400 B.R. at 95.[28] Courts ought to first look for

---

services; (C) whether the services were necessary to the administration, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed; and (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." *Coyote*, 400 B.R. at 91–92.

[26] As noted by the Honorable Bankruptcy Judge Stacey Jernigan in *Coyote*, such a deliberate omission makes sense from a policy standpoint. "There are hundreds-times more chapter 7 cases in the bankruptcy system than chapter 11 cases where chapter 11 trustees have been appointed. It certainly could create an administrative burden for courts and trustees if a 'reasonableness' inquiry were required in every single 'asset' chapter 7 case." *Id.* at 95, n. 12.

[27] *Id.*; *In re McKinney*, 383 B.R. 490 (Bankr. N.D. Cal. 2008) (holding that Section 330(a)(7) creates a rebuttable presumption that the maximum commission under Section 326(a) is reasonable).

[28] The *Coyote* court also noted that "in light of *Pro-Snax*, a bankruptcy court should focus heavily on whether the chapter 7 Trustee's services 'resulted in an identifiable, tangible, and material benefit to the bankruptcy estate.'" *Id.* In *Andrews & Kurth L.L.P. v. Family Snacks, Inc.* (*In re Pro-Snax Distributors, Inc.*), 157 F.3d 414 (5th Cir. 1998), the Fifth Circuit held that a debtor's attorney may be compensated prior to the appointment of a Chapter 11 trustee only if the attorney's services provided "an identifiable, tangible, and material benefit to the estate." *Id.* at 426. This Court does not believe that *Pro-Snax* applies to the case at bar, given that the Trustee is seeking commission based

29

disproportionality or inequitableness, rather than simply mechanically applying the *Johnson* factors in each case. *Id.* Such a methodical application would undermine the intent of Congress when it acted to exclude compensation for Chapter 7 trustees from mandatory analysis under Section 330(a)(3). *Id.*

In the instant case, the Trustee did perform services that resulted in the sale of the Ivy Run Property and Ivy Run Lot, and thereby generated proceeds, a portion of which were used to pay off undisputed secured claims. [Findings of Fact Nos. 8 & 15]. Given the constricted real estate market and noting that the purchaser of the properties might well have walked away if there had been delay in consummating the sale [Finding of Fact No. 28(e), (g)], the Trustee's efforts were by no means perfunctory. He acted swiftly and competently to close the sales of these properties and, by doing so, ensured that certain undisputed secured claims were paid. [Finding of Fact Nos. 8 & 30]. His timely actions also prevented mortgage interest, insurance payments, and property taxes from accruing, thereby preserving the value of the properties prior to their sales and fulfilling his fiduciary duties to the secured creditors. [Finding of Fact No. 28]. These facts, taken as a whole, argue in favor of awarding the Trustee the maximum amount of compensation allowed under Section 326(a).

---

on disbursement of proceeds rather than compensation for his services as an attorney in this case. *See In re JNS Aviation, LLC*, No. 04-21055, 2009 WL 80202, at * 3–4 (Bankr. N.D. Tex. Jan. 9, 2009) (noting the distinction between these two types of compensation and the policy reason behind heightened requirements for obtaining compensation as an attorney) ("Under Section 326(a), the trustee's compensation is capped for his statutory duties. While there is no cap on compensation for serving as an attorney for the estate, such services must be reasonable."). Further, even if *Pro-Snax* does apply to the case at bar, the Trustee provided an identifiable, tangible, and material benefit in distributing proceeds to undisputed lienholders and holding proceeds for distribution to either H.D.S. or unsecured creditors of the estate. [Findings of Fact Nos. 8 & 24]. At the time the Trustee undertook to sell the Ivy Run Property and the Ivy Run Lot, he had a good faith belief that there was substantial equity in the properties and, thus, believed that selling them was both necessary to preserve their value and reasonably likely to benefit the estate. Accordingly, the Trustee qualifies for compensation even under the hybrid application of a *Pro-Snax* analysis. *In re Cyrus II Partnership*, No. 05-39857, 2009 WL 2855725, at *5 (Bankr. S.D. Tex. Sept. 1, 2009) ("[S]ervices must both be beneficial toward completion of the case at the time they are rendered and they must produce an identifiable, tangible, and material benefit to the estate.")

However, the analysis does not stop here. While the Trustee was successful in selling these properties and paying undisputed secured claims, he has been unsuccessful—at least so far—in his attempt to invalidate H.D.S.'s lien. [Finding of Fact No. 21]. While the Court acknowledges that the Trustee had a good faith belief that H.D.S.'s lien was invalid and would not attach to the Excess Proceeds [Finding of Fact No. 28], the Court disagreed with his position and ruled in favor of H.D.S. in the Adversary Proceeding [Finding of Fact No. 21]. As a result, the Excess Proceeds are being held by the Trustee pending resolution on appeal. [Findings of Fact Nos. 8 & 15]. A total of $1,405,434.50 of unsecured claims have not yet been paid. [Finding of Fact No. 30]. Thus, while the Trustee has distributed a considerable amount of proceeds to holders of secured and administrative claims [Finding of Fact No. 30], he has not achieved all of the results he desired when he undertook to sell the Ivy Run Property and the Ivy Run Lot— namely, to generate a healthy distribution of funds to unsecured creditors. Accordingly, considering the totality of the facts and circumstances presented in this case, the Court concludes that it would be inequitable and disproportionate to award the Trustee the maximum amount of compensation allowed under Section 326(a). The Court will look to several of the *Johnson* factors to determine how much it will reduce the $28,881.73 to which the Trustee is entitled pursuant to Section 326(a).

A number of the *Johnson* factors weigh in favor of awarding the Trustee close to the statutory maximum. First, this case involved a novel and difficult question. As previously mentioned, the Fifth Circuit and Texas state courts have published conflicting decisions on the particular lien issue which is the basis of the Adversary Proceeding.[29] [Finding of Fact No. 23].

---

[29] The Fifth Circuit has held that a homestead exemption does not prevent a judgment lienholder from perfecting a lien on property that is exempt homestead; rather, it merely prevents the enforcement of that lien while the property is homestead. *Henderson v. Belknap (In re Henderson)*, 18 F.2d 1305 (5th Cir. 1994). However, Texas courts have

31

Until this Court or the Fifth Circuit reconciled the conflict, no trustee could have been certain whether or not H.D.S.'s lien was valid. Second, this case was undesirable. The Trustee knew that the Fifth Circuit and Texas state courts had published conflicting decisions and, consequently, that he might not be successful in generating any proceeds for distribution to unsecured creditors. Nevertheless, he pursued the sale of the Ivy Run Property and the Ivy Run Lot because he had a good faith belief that H.D.S.'s lien was invalid and he desired to fulfill his fiduciary duty to the creditors in this case. [Finding of Fact No. 28]. Third, a high level of skill was needed to perform the services demanded of the Trustee in this case. Specifically, the Trustee had to file applications with this Court to pursue the sale of the Ivy Run Property and the Ivy Run Lot (*i.e.* the Property Application and the Lot Application) [Findings of Fact Nos. 5 & 12], obtain approval [Findings of Fact Nos. 6 & 13], consummate the sales, and then distribute the proceeds to undisputed lienholders [Findings of Fact Nos. 8 & 15]. Further, due to the dispute surrounding the validity of H.D.S's lien on the Excess Proceeds, the Trustee was forced to pursue a clearly unsettled issue of law in the Adversary Proceeding before this Court and, upon defeat, to argue his position before the Fifth Circuit on appeal. [Findings of Fact Nos. 11, 20–23].

However, the Court must also consider that a critical *Johnson* factor weighs in favor of granting the Trustee much less than the statutory maximum under Section 326(a). Specifically, there was a significant amount of money involved in this case, and the Trustee has only achieved a partially successful result. By satisfying the undisputed liens [Finding of Fact No. 8] and paying the Debtor and Atkinson the $125,000 homestead exemption [Finding of Fact No. 19],

---

held that "Texas law is well settled that a judgment lien that has been properly abstracted cannot attach to a homestead as long as the property remains homestead." *Wilcox v. Marriott*, 103 S.W.3d 469, 473 (Tex. App.—San Antonio 2003, pet. denied); *The Cadle Co. v. Harvey*, 46 S.W.3d 282, 285 (Tex. App.—Fort Worth 2001, pet. denied); *United States v. Johnson*, 160 F.3d 1061, 1064–65 (5th Cir. 1998). These conflicting decisions underscore why the issue confronting the Trustee has been both difficult and novel.

the Trustee distributed a total of $1,286,755.11 out of the $1,799,389.66 in proceeds from the sale of the Ivy Run Property and the Ivy Run Lot. [Finding of Fact No. 30]. The Trustee continues to hold $512,634.55 in Excess Proceeds pending resolution of the Adversary Proceeding on appeal. [Findings of Fact Nos. 24 & 30]. H.D.S.'s disputed lien on the Excess Proceeds totals $538,016.46 [Findings of Fact Nos. 2 & 3], and the IRS asserts an additional, unsatisfied secured claim in the amount of $192,335.19 [Finding of Fact No. 30]. A total of $1,405,434.50 of unsecured claims also remains unpaid. [Finding of Fact No. 30]. Thus, if the Fifth Circuit affirms this Court's ruling in the Adversary Proceeding, all of the Excess Proceeds will be distributed to H.D.S., leaving the IRS's secured claim and all of the unsecured claims unsatisfied. Further, even if the Fifth Circuit overturns this Court's ruling, the remaining claimants will receive only a fraction of their allowed claims.[30] Although the Court agrees that this case has involved a novel and difficult issue, has been undesirable, and has required a high level of skill to perform the services demanded of the Trustee, the Court emphasizes that the Trustee has only achieved a partially successful result. Based on the foregoing, the Court concludes the Section 326(a) compensation should be reduced from $28,881.73 (i.e. the ceiling amount based upon the putative distribution to H.D.S.) to $14,440.87, representing one-half of the statutory maximum calculated pursuant to Section 326(a).

**D. In the alternative, even if this Court is incorrect in concluding that the Trustee may recover compensation pursuant to Sections 330 and 326, the Trustee is nevertheless entitled to seek reimbursement of his administrative expenses pursuant to Section 506(c).**

---

[30] If the Fifth Circuit rules that H.D.S.'s lien does not attach to the Excess Proceeds, then its $538,016.46 claim will be added to the existing $1,405,434.50 of unsecured claims for a total of $1,943,450.96 in unsecured claims. Assuming that the IRS's secured claim is satisfied out of the $512,634.55 in Excess Proceeds, only $320,299.36 will remain for distribution among the $1,943,450.96 in unsecured claims. Assuming all of the claims are assigned the same priority, each claimant would receive approximately 16 cents on the dollar.

33

1.  <u>The Trustee is not required to specifically plead reimbursement of his administrative expenses pursuant to Section 506(c) in order to obtain the right to a surcharge against the Excess Proceeds.</u>

Although in the Application the Trustee does not specifically seek reimbursement of his administrative expenses pursuant to Section 506(c), he does request to "be granted such other and further relief as is just." [Finding of Fact No. 25]. This broad language alone is sufficient to allow this Court to consider granting the Trustee reimbursement pursuant to Section 506(c). Additionally, Fed. R. Civ. P. 15(b)(2), as applied through Fed. R. Bankr. P. 7015 and 9014(c), states that "when an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." At the May 13, 2010 hearing, Ms. Potts—counsel for the Trustee—made an alternative argument that even if the Trustee is not entitled to compensation under Section 326(a), he should nevertheless be reimbursed pursuant to Section 506(c). [Finding of Fact No. 29]. Also, in its response and objection to the Application, H.D.S. asserted that the "[T]rustee may not be compensated out of encumbered assets in which a creditor has an undercollateralized security interest **unless** there is a showing under 506(c) that the professional's fees resulted in preservation of collateral that has benefited the secured creditor or the creditor consents." (emphasis added) [Finding of Fact No. 26]. Thus, the Court may consider whether the Trustee is entitled to reimbursement pursuant to Section 506(c) because H.D.S. expressly and impliedly consented to this Court's adjudication of the issue.

Further, Fed. R. Civ. P. 54(c), applied through Rules 7054(a) and 9014(c), provides that "every other final judgment [besides a default judgment] should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." The Fifth Circuit has held that Fed. R. Civ. P. 54(c) "justifies an award of attorney[s'] fees to a prevailing party

34

who failed to plead for such an award." *Engel v. Teleprompter Corp.*, 732 F.2d 1238, 1241 (5th Cir. 1984). Accordingly, Fed. R. Civ. P. 54(c) and the Fifth Circuit's interpretation in *Engel* provide this Court with authority to consider compensating the Trustee pursuant to Section 506(c), irrespective of the basis for the Trustee's request in the Application.

> 2.  <u>The Trustee may seek a surcharge against the proceeds from the sale of the Ivy Run Property and the Ivy Run Lot.</u>

Section 506(c) states that the "trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property." 11 U.S.C. § 506(c). Typically, administrative expenses are satisfied out of unencumbered assets in the bankruptcy estate. *New Orleans Pub. Serv., Inc. v. First Fed. Sav. & Loan Ass'n (In re Delta Towers, Ltd.)*, 924 F.2d 74, 76 (5th Cir. 1991). Section 506(c) provides an exception to the general rule, however, in allowing administrative expenses to be surcharged against a creditor's collateral as long as the collateral is held within the bankruptcy estate. *Borrego Springs Bank, N.A. v. Skuna River Lumber, LLC (In re Skuna River Lumber, LLC)*, 564 F.3d 353, 355 (5th Cir. 2009).[31] Meaning, once property is transferred out of a bankruptcy estate free and clear of all liens (*i.e.* sold unencumbered from the estate), the property is no longer "property securing an allowed secured claim" and, therefore, cannot be surcharged under Section 506(c). *Id.* (noting that if the bankruptcy court wished to retain jurisdiction over the property, it should have withheld approval

---

[31] The Fifth Circuit has noted that "[t]he underlying rationale for charging a lienholder with the costs and expenses of preserving or disposing of the secured collateral is that the general estate and unsecured creditors should not be required to bear the cost of protecting what is not theirs. *PSI, Inc. v. Aguillard (In the Matter of Senior-G & A Operating Co., Inc.)*, 957 F.2d 1290, 1298–99 (5th Cir. 1992).

of the sale pending payment of the seller's expenses or provided that any property acquired by credit bid would be conveyed subject to a lien securing applicable auction fees).

In the instant case, the Trustee sought to sell both the Ivy Run Property and the Ivy Run Lot "as is" and free and clear of all liens, claims, charges, encumbrances, and interests. [Findings of Fact Nos. 5 & 12].   This Court's orders granting the Property Application and the Lot Application, however, expressly stated that "any other liens and/or encumbrances against the property shall be, and hereby are, transferred to the balance of the Sale Proceeds." [Findings of Fact Nos. 6 & 13]. This language constitutes precisely the type of designation contemplated in *Borrego* that allows the Court to retain jurisdiction in order to surcharge expenses against the Ivy Run Property and the Ivy Run Lot. Further, the Excess Proceeds are being held by the Trustee pending resolution of the Adversary Proceeding on appeal. [Finding of Fact No. 24]. Thus, not only were the sales of the properties expressly subject to H.D.S's lien, assuming that it is held by the Fifth Circuit to be valid and enforceable, but the Excess Proceeds from these sales have not yet been released from the Trustee's account. Accordingly, this Court clearly retains the power to surcharge the Trustee's administrative expenses against the Excess Proceeds.

    3.  <u>If the Fifth Circuit holds that H.D.S. has a valid lien on the Excess Proceeds, the Trustee is entitled to recover the reasonable and necessary costs and expenses he incurred in selling the Ivy Run Property and the Ivy Run Lot to the extent that these costs benefited H.D.S.</u>

Any funds awarded to the Trustee pursuant to Section 506(c) must be derived from "property securing an allowed secured claim." Prior to the Petition Date, H.D.S. obtained a judgment against the Debtor, abstracted its judgment, and recorded its judgment in the appropriate real property records. [Findings of Fact Nos. 2–3]. Based on Fifth Circuit case law holding that a homestead exemption does not prevent a judgment lienholder from perfecting its lien on homestead property, this Court held in the Adversary Proceeding that H.D.S.'s judgment

36

had attached to the Ivy Run Property and the Ivy Run Lot prior to the Petition Date, and thus also attached to the proceeds from the post-petition sale of the properties. [Findings of Fact Nos. 21 & 23]. Thus, assuming that the Fifth Circuit upholds this Court's ruling in the Adversary Proceeding, H.D.S. has an enforceable claim secured by the Ivy Run Property and Ivy Run Lot, or—as of now—the Excess Proceeds remaining from the sales of these properties. As such, the Ivy Run Property and the Ivy Run Lot—and, now, the Excess Proceeds—constitute "property securing an allowed secured claim," and the Trustee may recover out of the Excess Proceeds his costs and expenses incurred in "preserving, or disposing of, such property" pursuant to Section 506(c).

In determining the amount of costs and expenses to which the Trustee may be entitled to recover, the Court must evaluate both the reasonableness and necessity of the request, as well as the extent to which H.D.S. benefited from the Trustee's expenditures. 11 U.S.C. § 506(c) ("The trustee may recover . . . reasonable, necessary costs and expenses . . . to the extent of any benefit to the holder of such claim."); *PSI, Inc.*, 957 F.2d at 1298–99 ("[I]n order to charge a secured creditor with expenses on the basis of § 506(c), three elements must be established: 1) expenditure was necessary, 2) the amounts expended were reasonable, and 3) the creditor benefited from the expenses.") (internal quotations and citations omitted). The Fifth Circuit has interpreted this language to require a quantifiable and direct benefit to the secured creditor. *In re Grimland, Inc.*, 243 F.3d 228, 232–233 (5th Cir. 2001). Indirect or speculative benefits do not qualify for surcharge under 506(c), nor do expenses that benefit a debtor or other creditors of the bankruptcy estate. *Id.* The burden of establishing the elements set forth in Section 506(c) is on the claimant. *PSI, Inc.*, 957 F.2d at 1299; *Delta Towers*, 924 F.2d at 76.

37

This Court has already found that the expenses incurred by the Trustee in selling the Ivy Run Property and the Ivy Run Lot were necessary to the administration of this case. Indeed, because the Trustee believed that there was substantial equity in the properties for distribution to unsecured creditors, he effectuated the sales in order to preserve the value of the properties for the estate and fulfill his duty to the unsecured creditors. [Finding of Fact No. 28]. Further, the Trustee's services unquestionably provided a direct benefit to H.D.S. Specifically, if the Trustee had not sold the Ivy Run Property and the Ivy Run Lot, one of two scenarios would have occurred: (1) the Trustee would have abandoned the properties; or (2) a secured creditor would have successfully prosecuted a motion to lift stay. Under either scenario, a foreclosure sale under applicable Texas law would have been scheduled and, at that point, H.D.S. would have had to either pay cash to purchase all liens senior to its lien or show up at the foreclosure sale and make a cash bid. Given that the first lien on the Homestead totaled approximately $1 million, there is little doubt that H.D.S. would have had to pay approximately $1.0 million in cash. [Finding of Fact No. 30]. The record is devoid of H.D.S.'s financial strength, but there can be little doubt that writing a check for $1.0 million is a huge financial decision for any company. The fact that the Trustee was able to sell the Ivy Run Property and the Ivy Run Lot alleviated the need for H.D.S. to come out of pocket itself to the tune of at least $1.0 million. Further, even though the Ivy Run Property had been on the market for over a year before the Trustee sold it, he managed to sell it expeditiously and obtained a very favorable price for the property. [Finding of Fact No. 28]. If the Trustee had not sold the Ivy Run Property, per annum property taxes of $20,000, mortgage interest, and insurance payments would have accrued and depleted the properties' value. [Finding of Fact No. 28(f)].

Given the present record, however, the Court cannot determine whether the amount of surcharge sought is reasonable in this case, as the Trustee has not submitted any evidence regarding the nature or extent of the costs and expenses incurred in selling the Ivy Run Property and the Ivy Run Lot. In closing arguments, Ms. Potts presented the alternative argument that in the event that this Court did not award the Trustee compensation pursuant to Sections 330 and 326, the Trustee was entitled to a surcharge against the Excess Proceeds in the same amount. [Finding of Fact No. 29]. The Court expressly rejects the assertion that a trustee may obtain a 506(c) surcharge against a secured creditor's collateral in the amount of the statutory maximum commission under 326(a). 11 U.S.C. § 506(c); *United States Trustee v. Messer* (*In re Pink Cadillac Assocs.*), No. 96 CIV. 4571(LLS), 1997 WL 164282, at *5 (S.D.N.Y. Apr. 8, 1997) (noting that Section 506(c), unlike Section 330, does not state that it is subject to Section 326(a)). Because the Trustee bears the burden of proving his right to a 506(c) surcharge, the Court cannot quantify the exact amount the Trustee is entitled to recover pursuant to this Section. Accordingly, the Court will, in an order issued simultaneously with the entry of this Memorandum Opinion on the docket, grant the Trustee the option to present evidence to this Court regarding the nature and extent of the costs and expenses he incurred in selling the Ivy Run Property and Ivy Run Lot and the extent to which those costs directly benefited H.D.S., assuming that it remains a secured creditor of the Debtor's bankruptcy estate. Then, the order subsequently issued by the Court regarding the Application may reflect this alternative award in the event that the Court's award of $14,440.87 in commission pursuant to Sections 326 and 330 is overturned on any subsequent appeal that H.D.S. might bring.

## V. CONCLUSION

There is no question that Chapter 7 trustees have a fiduciary duty to locate and liquidate assets for the benefit of unsecured creditors. *In re Troy Dodson Constr. Co.*, 993 F.2d 1211, 1216 (5th Cir. 1993). In fulfilling this duty, trustees must be given the benefit of the doubt when they take reasonable steps to locate and liquidate what they believe in good faith are assets of the estate with equity. Merely because their good faith efforts do not result in any distribution to unsecured creditors should not automatically bar them from compensation. While it may seem incongruous—and is certainly atypical—for a Chapter 7 trustee to spend time and energy selling assets of the estate that end up being fully encumbered, such action is by no means an automatic bar to compensating the trustee. Indeed, quite the contrary: Section 326(a)'s language expressly empowers this Court to use its discretion to allow compensation to a trustee for "all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, *but including holders of secured claims*." (emphasis added). 11 U.S.C. § 326(a). And, because trustees have as much of a fiduciary duty to secured creditors as to unsecured creditors, it is certainly logical that if a trustee believes an encumbered asset of the estate should be sold—and he manages to sell it for a sufficient amount to pay the liens without objection from, or with the support of, the secured creditor—then he deserves compensation. *Troy Dodson*, 993 F.2d at 1216 ("The trustee owes a fiduciary duty to *all* the creditors, not just to the unsecured creditors.") (emphasis in original); *In re Center Teleproductions, Inc.*, 112 B.R. 567, 584 (Bankr. S.D.N.Y. 1990) ("The breadth of a trustee's fiduciary duty extends to secured creditors and he is therefore obligated to exercise due care in the preservation and custody of secured creditor's collateral.").

Those are the circumstances in the case at bar and that is why this Court concludes that the Trustee is entitled to compensation. It is only because the Trustee's efforts here have—at

40

least so far—resulted in payment of solely secured claims, with nothing for unsecured claims, that this Court has decided to award less than all of the compensation requested by the Trustee. That is the price that the Trustee pays for his mistaken belief—however much his belief was in good faith, which it clearly was—that the Ivy Run Property and the Ivy Run Lot had substantial equity that could be used to pay unsecured claims after all valid liens were paid. If the Fifth Circuit eventually reverses this Court's ruling in the Adversary Proceeding and holds that H.D.S.'s judgment lien is invalid, then the Trustee may file another request for compensation seeking an amount greater than what this Court is presently awarding to the Trustee.

An order consistent with this Opinion will be entered on the docket simultaneously with the entry on the docket of this Opinion.

Signed on this 17th day of August, 2010.

Jeff Bohm
United States Bankruptcy Judge